# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Matthew F. Kennelly | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 99 C 7749 | **DATE** | 11/2/2001 |
| **CASE TITLE** | Lancaster vs. George Welborn | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m)  ☐ General Rule 21  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Enter Memorandum Opinion and Order. For the reasons set forth on the attached order, the Court denies Lancaster's petition for a writ of habeas corpus. Judgment is entered in favor of respondent. The Court declines to issue a certificate of appealability on any of the issues raised in Lancaster's petition.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | Document Number |
|---|---|---|---|---|
| | No notices required, advised in open court. | | number of notices | |
| | No notices required. | | | |
| | Notices mailed by judge's staff. | | NOV 0 6 2001 | |
| | Notified counsel by telephone. | | date docketed | 27 |
| ✓ | Docketing to mail notices. | | | |
| | Mail AO 450 form. | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | | |
| OR | courtroom deputy's initials | 01 NOV -5 PM 5: 08 | date mailed notice | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

UNITED STATES OF AMERICA, ex rel. )
DONALD LANCASTER, )
)
        Petitioner, )
)
v. )   Case No.   99 C 7749
)
GEORGE WELBORN, )
)
        Respondent. )

## MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

    Shortly after midnight on September 7, 1992, Edgar Berrera[1] was shot in the head at point blank range; he survived, but sustained debilitating injuries. After several witnesses identified him through a police line-up, Donald Lancaster was charged with the crime, and a Cook County Circuit Court jury convicted him of attempted murder and two counts of aggravated battery in connection with Berrera's shooting. Lancaster's attorney filed a motion for new trial, and Lancaster also submitted a memorandum in support of that motion, arguing, among other things, that his attorney was ineffective at trial because he failed to cross-examine the victim's father, Augustin Berrera, failed to impeach the state's eyewitness, Lizardo Hernandez, and advised Lancaster not to testify. The trial court found that counsel's decisions on cross-examination and impeachment were matters of sound trial strategy and did not reflect incompetence; the court reached the same conclusion with respect to the decision to keep Lancaster off the stand. The

---

    [1]Berrera, the surname of the victim and three of the state's witnesses, is spelled in various parts of the record with an "e" (Berrera) and in other parts of the record with an "a" (Barrera); we adopt the former spelling simply because it seems to be more prevalent.

court therefore denied the motion for new trial and sentenced Lancaster to an extended term of 50 years.

Lancaster appealed both the conviction and the sentence. He argued that the trial court erroneously admitted evidence that Lancaster was seen beating another person in the head with a bottle shortly before the shooting and that the trial court abused its discretion in imposing an extended-term sentence. The appellate court rejected both arguments. Lancaster then filed a petition for leave to appeal to the Illinois Supreme Court, seeking review because of "the inconsistent statements & testimonys of the eye witnesses which my whole case is surrounded by[,] . . . because of the bogus line up that the police put me in plus the bogus sentence of 50 years for attempt murder which I thought only carried 6 to 30." Exhibit C. The supreme court denied the petition.

Lancaster also filed a petition for post-conviction relief, arguing that his attorney was ineffective for failing to impeach the state's witnesses with their various prior inconsistent statements, for failing to cross-examine Augustin Berrera, for failing to read supplementary police reports, for advising him not to testify, and for failing to object to improper remarks made by the prosecutor in closing argument. He also argued that the prosecutor's improper remarks and improper rebuttal deprived him of a fair trial and that the judge violated his constitutional rights when he denied Lancaster's attorney's motion to withdraw and forced him to continue to represent Lancaster at the sentencing hearing. He also challenged the line-up, and he appears to have raised a challenge to the sufficiency of the evidence. The trial court summarily dismissed the petition, at least in part because Lancaster could have raised the claims on appeal but did not. Lancaster appealed the dismissal of his post-conviction petition, his attorney moved to withdraw

under *Pennsylvania v. Finley*, and Lancaster opposed the motion. The appellate court found no arguable issues of merit, granted counsel's *Finley* motion and affirmed the dismissal of the petition. Lancaster asked for a rehearing and the court denied that as well. Lancaster then filed another petition for leave to appeal, which the supreme court denied. A little more than a year later, Lancaster filed a petition for habeas corpus, raising various claims and subparts, which we address below.

Lancaster first challenges the trial court's conclusion that he waived the issues raised in his post-conviction petition by not raising them on direct appeal. This claim involves the trial court's application of Illinois law and is therefore beyond the scope of what this Court is permitted to address in an action under 28 U.S.C. §2254. *See Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) ("it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions. In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States."); *Franklin v. Gilmore*, 188 F.3d 877, 882-82 (7th Cir. 1999) (forfeiture is a question of the state's internal law; under Illinois law, issues that could have been raised on direct appeal, but were not, are forfeited), *cert. denied*, 529 U.S. 1039 (2000).

Lancaster next claims that his trial counsel was constitutionally ineffective because: (1) he failed to impeach Leroy Crawford, Lizardo Hernandez, Edwin Berrera and Maria Berrera; (2) he failed to cross-examine Augustin Berrera; (3) he failed to read the supplementary police reports, which would clearly have demonstrated the need for such impeachment and cross-examination; (4) he advised Lancaster not to testify; and (5) he failed to object to improper remarks and arguments the prosecutors made in their closing arguments. As we explained above,

3

Lancaster raised some of these claims – namely (2), (4) and the part of (1) relating to Lizardo Hernandez – before the trial court, and the court considered and rejected them on the merits. We may grant habeas relief on the considered claims only if the state court's adjudication "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. §2254(d)(1). After reading the record, the Court concludes that the state court's findings on Lancaster's ineffective assistance claim were consistent with established federal law as determined by the Supreme Court.

To prove a claim of ineffective assistance of counsel, a petitioner must show that counsel's representation fell below an objective standard of reasonableness, and that petitioner was prejudiced in that, but for counsel's substandard representation, the result of the proceeding would have been different. *Strickland v. Washington*, 466 U.S. 668, 688, 694 (1984). On the performance prong, there is "a strong presumption that counsel rendered reasonably effective assistance," *United States v. Limehouse*, 950 F.2d 501, 503 (7th Cir. 1991) (citing *Strickland*, 466 U.S. at 689), and that the challenged conduct "might be considered a sound trial strategy." *Strickland*, 466 U.S. at 689 (citation and quotation omitted). Here that presumption is borne out. In his closing argument, Lancaster's attorney specifically explained to the jury that he, as a matter of trial strategy, chose not to question (or question extensively) Maria Berrera or Augustin Berrera because he wanted to treat them gently, after all, whether or not Lancaster had pulled the trigger, their son was shot and seriously wounded. He argued as follows:

> The question comes down to yes, he got hurt; and yes, he is paralyzed; and yes, it is horrible, and we would agree. And we felt sorry for the mother and the father too. If you remember, we didn't even ask the father any questions. We didn't ask

4

the father any questions because of how distraught he was when he was up there as it was. And the mother too, if you recall, I did ask her a few questions. But I treated her very gently because it was an emotional thing. I mean it is her son who got shot in the head. I mean he changed.

Record, F - 14-15. We will not second guess counsel's strategy decision to treat the victim's parents with kid gloves. *See United States v. Williams*, 106 F.3d 1362, 1367 (7th Cir. 1997) ("Our examination of an ineffectiveness of counsel claim is ""'highly deferential' to counsel, presuming reasonable judgment and declining to second guess strategic choices.") (quoting *Strickland*, 466 U.S. at 689). *See also United States v. Zarnes*, 33 F.3d 1454, 1473 (7th Cir. 1994) (we may not "second-guess trial tactics that are rationally-based"). Nor will we second guess counsel's decision to keep Lancaster off the stand. As the trial court noted, Lancaster's alibi had already been put in evidence through other witnesses, and the risk that Lancaster would either contradict that evidence or open the door to other bad evidence may very well have outweighed any good Lancaster could have done himself. *See Underwood v. Clark*, 939 F.2d 473, 475 (7th Cir. 1991) (advising a client not to testify does not amount to ineffective assistance of counsel if that decision was sound under the circumstances); *Rogers-Bey v. Lane*, 896 F.2d 279, 283 (7th Cir. 1990) (advising a criminal client not to take the witness stand will not constitute ineffective assistance of counsel if that advice was a reasonable strategic decision under the circumstances).

Lancaster also claims that his attorney was ineffective for failing to impeach Edwin Berrera, the victim's brother; more accurately, Lancaster concedes that his attorney impeached Berrera "a little bit" but did not do enough to undermine his credibility before the jury. Although the trial court did not specifically address this claim, the same reasoning explained above would

preclude us from granting habeas relief on this basis: it would not have been unreasonable to treat the victim's brother, who like the victim's parents apparently watched as Edgar was shot point-blank in the head, gently so as not to seem insensitive to the obvious trauma he had already suffered.

Lancaster also argues that his attorney was constitutionally deficient because he failed to impeach Leroy Crawford and Lizardo Hernandez, two eyewitnesses who testified for the state. Crawford had no relationship to anyone involved in the case; he just happened to be driving near the area when Berrera was shot. Hernandez was similarly not related to the victim, though he was friends with him. Given the lack of any familial relationship, counsel may not have had any reason to go easy on these witnesses. But contrary to Lancaster's arguments, the record shows that defense counsel *did* cross-examine these witnesses and that he did so adequately. On direct examination, Crawford testified that he was driving east on Lawrence Avenue shortly after midnight on September 7, 1992 and that near the intersection of Lawrence and Drake he saw a kid being beat up in an alley; he saw one guy beating the kid over the head with a bottle and another guy brutally kicking the kid, who was laying on the ground. Record, D - 83-86. Crawford identified Lancaster as the person who was hitting the kid over the head with the bottle. *Id.*, D - 85. He also said he saw Lancaster and the other attacker run over to a parking lot cater corner from the alley, and then he heard a gunshot. *Id.*, D - 88-89. Finally, he testified that he had described for the police the person he had seen with the bottle, and that in September 1992 he went to the police station, looked at some pictures, and identified Lancaster as that person. *Id.*, D - 93-96. On cross-examination, Lancaster's attorney established that Crawford did not actually see Berrera get shot, that Crawford left the scene even before the alley fight was over,

6

that he never saw anyone pull out a gun in the alley, and that he did not provide the police with a description of the person he had seen with the bottle until the day after all of this happened. *Id.*, D - 99, 103, 105. He got Crawford to admit that the whole incident happened very quickly. *Id.*, D - 107. And perhaps most importantly, he firmed up Crawford's description of the person wielding the bottle, *id.*, D - 97-98, which he then pointed out in closing argument bore little resemblance to Lancaster's physical appearance. Indeed, counsel's entire closing argument was dedicated to pointing out the inconsistencies in the testimony of the state's witnesses and to noting the absence of any credible identification evidence. *See id.*, F - 14-41.

Lizardo Hernandez testified on direct examination that he was friends with Edgar Berrera and that he, Edgar and some other friends were hanging out near Berrera's house shortly after midnight on September 7, 1992, when they saw some "gang-bangers" chasing someone down Lawrence in their direction. Record, D - 185-86. Hernandez stated that one of the gang-bangers had a gun, and he identified Lancaster as that person, *id.*, D - 187-88; he also said that there was another man with Lancaster who did not appear to have a gun. He testified that when he saw them coming, he ran, and then he heard a gunshot. *Id.*, D - 190-91. He testified that he told the police that night what he had seen, and that he identified Lancaster at a police line-up at the station four days later, on September 11, 1992. *Id.*, D- 191-92. On cross-examination, Lancaster's attorney got Hernandez to concede that the entire incident happened very quickly, *id.*, D - 196, that there were at least six other "gang-bangers" around at the time of the shooting, *id.*, D - 197, that he could not remember much about the person who was supposedly with Lancaster at the time of the shooting, *id.*, D - 198, that he did not give the police a description of the shooter that night, and that he never gave the police a description of the shooter, except for

7

identifying him at the police station line-up. *Id.*, D - 199-200. He got Hernandez to admit that he had never before seen either of the gang-bangers he saw running toward him that night, and that he had, at most, a couple of seconds to look at them. *Id.*, D - 201-02. Lancaster's attorney also got Hernandez to admit that he was running down the alley when the shot was fired. *Id.*, D - 201. This testimony all supported counsel's defense theory that the state was prosecuting the wrong person. Under the circumstances, we cannot say that counsel was in any way incompetent or unreasonable in the way he cross-examined Crawford and Hernandez.

Along the same failure-to-impeach lines, Lancaster argues that his attorney was ineffective for failing to read the supplementary police reports; had his attorney read those reports, Lancaster argues, he would have seen the inconsistencies in the state's witnesses' stories and would have realized that he needed to cross-examine them on those inconsistencies. Because we have already concluded that the failure to cross-examine or impeach the state's witnesses did not render counsel's performance ineffective, it would not be appropriate to grant habeas relief because of counsel's failure to read the reports that simply would have demonstrated the need for such cross-examination or impeachment. *See Mason v. Hanks*, 97 F.3d 887, 893 (7th Cir.1996) (the ultimate question in an ineffective assistance of counsel claim is whether, but for counsel's errors, there is reasonable probability that the outcome of the proceeding would have been different).

Lancaster also argues that his attorney was ineffective for failing to object to certain statements made by the prosecutor. Lancaster challenges the following part of the state's rebuttal closing argument:

> You heard the story because it is frozen in the mind's eye of the Barrera

> family. . . . The intensity of that memory will live with them each time they recall that incident. The truth was in their eyes. You had a chance to look at their eyes when each of them spoke. You saw it. You heard it. I know you had to feel it.

Record, F - 46. He argues that this part of the prosecutor's closing was improper because it was designed to inflame the jurors' passion and to encourage them to reach a verdict based on sympathy and emotion, rather than evidence. He argues that his attorney should have objected and that his failure to do so amounted to ineffective assistance of counsel because it both waived the issue on appeal and denied him a fair trial.

Before we can gauge whether Lancaster's attorney reasonably should have objected to the statements, we need to ask whether they were in fact improper. *Cf. United States v. Ward*, 211 F.3d 356, 365 (7th Cir. 2000) (in assessing allegations of prosecutorial misconduct during closing argument, we first ask whether the statement in isolation was, in fact, improper, and we then ask whether in light of the record as a whole the misconduct deprived the petitioner of a fair trial). Lancaster is correct that arguments made solely to inflame the passions of the jury are improper. *E.g., United States v. Waldemer*, 50 F.3d 1379, 1384 (7th Cir. 1995) (citing *United States v. Ovalle-Marquez*, 36 F.3d 212, 220 (1st Cir. 1994)). But given the circumstances of the case – notably defense counsel's insistence on the absence of any credible identification evidence and his focus on the many inconsistencies in the witnesses' descriptions of the events and the shooter – the argument was logically connected to the evidence and therefore proper. *See Ward*, 211 F.3d at 365 (comments that were logically and proximally connected to the evidence or that were legitimately made in response to defense counsel's closing were not improper). Because the statements themselves were not improper, the failure to object to them was not unreasonable. Moreover, Lancaster's attorney specifically argued in his closing to the jury that it should not let

9

sympathy or prejudice influence it, Record, F - 15, and the Court instructed the jury to that effect, *id.*, F - 55. Thus, even if we could find the prosecutor's comments improper, we still could not grant Lancaster habeas relief on the basis of his attorney's failure to object to the comments. *See Mason*, 97 F.3d at 893 (the ultimate question in an ineffective assistance of counsel claim is whether, but for counsel's errors, there is reasonable probability that the outcome of the proceeding would have been different).

Finally, Lancaster raises two challenges to his sentence. He first argues that the trial court abused its discretion in imposing a fifty-year, extended-term sentence. On this score, Lancaster argues that his crime was neither particularly brutal nor heinous and that his prior criminal conduct did not warrant such a long prison term; he argues that the 50-year sentence he got was "grossly disproportionate" to his crime because he shot Berrera only once and because Berrera survived. Because the court sentenced Lancaster to a term of imprisonment that was within statutory limits, this claim is not grounds for relief on federal habeas corpus. *See Koo v. McBride*, 124 F.3d 869, 875 (7th Cir. 1997).

Lancaster also claims that his sentence violated the principle announced in *Apprendi v. New Jersey*, 530 U.S. 466 (2000), that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." *Id.* at 490. As we explained above, after the jury convicted Lancaster on all counts, the trial court imposed an extended-term sentence based upon its finding that Lancaster's crime was particularly brutal and heinous. Unquestionably, were Lancaster sentenced today, that decision would be unconstitutional under *Apprendi*; the question of whether the crime was particularly brutal and heinous would have to be determined by the jury

and proved by the state beyond a reasonable doubt. But the unconstitutionality of Lancaster's sentence under the current state of the law does not necessarily mean that Lancaster is entitled to habeas corpus relief.

The respondent has argued that we are precluded from considering the merits of Lancaster's *Apprendi* claim because he failed to raise it in state court. The doctrine of procedural default so provides: before we can reach the merits of the claim, we must find that Lancaster fairly presented his federal constitutional claim in state court. *See Bocian v. Godinez*, 101 F.3d 465, 468 (7th Cir. 1996). He did not; although Lancaster challenged the trial court's finding that his crime was brutal and heinous, he never argued that the jury, and not the judge, should have been charged with deciding that question. In short, Lancaster never gave the state courts a chance to resolve the question before turning to the federal courts, and we therefore find that his *Apprendi* claim is procedurally defaulted. *See Cruz v. Warden of Dwight Correctional Center*, 907 F.2d 665, 667 (7th Cir. 1990) (to have "fairly presented" a claim to the state court, the petitioner must have clearly informed the state court of the factual basis for that claim and argued to the state court that those facts constituted a violation of the petitioner's federal constitutional rights); *Picard v. Connor*, 404 U.S. 270, 277 (1971) (a claim is "fairly presented" to the state court if the petitioner submitted both the operative facts and the controlling legal principles).

Despite the procedural default, Lancaster may obtain relief on his *Apprendi* claim if he can show "cause and prejudice." *Thomas v. McCaughtry*, 201 F.3d 995, 999 (7th Cir. 2000). Lancaster argues that cause exists to excuse his default because the claim is novel and could not have been raised until the Supreme Court issued *Apprendi* in 2000, six years after he was sentenced and two years after the Illinois Supreme Court denied his last PLA. But "the lack of

precedent for a position differs from 'cause' for failing to make a legal argument." *United States v. Smith*, 241 F.3d 546, 548 (7th Cir. 2001). Although the lack of *any* reasonable legal basis for a novel constitutional claim may constitute "cause" for failure to raise that argument, *Murray v. Carrier*, 477 U.S. 478, 488 (1986); *Reed v. Ross*, 468 U.S. 1, 16 (1984); *Smith*, 241 F.3d at 548, the Seventh Circuit has held that the foundation for *Apprendi* "was laid long before 1992." *Smith*, 241 F.3d at 548; *Garrott v. United States*, 238 F.3d 903, 905-06 (2001). In fact, the Seventh Circuit has suggested that a reasonable legal basis for *Apprendi*-like claims existed as early as 1986 and perhaps even earlier. *Garrott*, 238 F.3d at 905-06 (citing *McMillan v. Pennsylvania*, 477 U.S. 79 (1986); *In re Winship*, 397 U.S. 358 (1970)). Based on *Smith* and *Garrott*, the Court finds that Lancaster cannot establish cause for failing to raise his *Apprendi* claim in the state courts, and the Court is therefore precluded from reaching the merits of that claim in this proceeding.

Lastly, we consider whether we should issue a certificate of appealability. A COA may not issue unless "the applicant has made a substantial showing of the denial of a constitutional right," 28 U.S.C. §2253(c); in other words, that reasonable jurists could debate whether the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further. *See Barefoot v. Estelle*, 463 U.S. 880, 894 (1983). As to the claims we rejected on the merits, we issue a COA if "reasonable jurists would find [our] assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). As to the claims we dismissed on procedural grounds, we issue a COA if "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and [if] jurists of reason would find it debatable whether the

12

district court was correct in its procedural ruling." *Id.* Putting aside for the moment the *Apprendi* claim, we find nothing to suggest that the merits of any of Lancaster's claims are debatable or deserving of further consideration. We reach the opposite conclusion with respect to Lancaster's *Apprendi* claim. But because we dismiss that claim on procedural grounds, it is not enough that reasonable jurists could agree that Lancaster has made a substantial showing of a denial of a constitutional right; we must also find that reasonable jurists could agree that the claim could be heard here despite Lancaster's failure to fairly present the claim in the state court. And this we cannot do.

## CONCLUSION

For the reasons explained in this opinion, the Court denies Lancaster's petition for a writ of habeas corpus. The Clerk is directed to enter judgment in favor of respondent. The Court declines to issue a certificate of appealability on any of the issues raised in Lancaster's petition.

Dated: November 2, 2001

MATTHEW F. KENNELLY
United States District Judge